Filed 10/23/24  P. v. Perez CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSEPH PEREZ,<br><br>    Defendant and Appellant. | B332963<br><br>(Los Angeles County<br>Super. Ct. No. LA083397) |

APPEAL from an order of the Superior Court of Los Angeles County, Richard H. Kirschner, Judge.  Affirmed.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Marc A. Kohm and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Joseph Perez appeals from a postjudgment order denying his motion for a *Franklin*/*Cook*[1] proceeding. The superior court found Perez was ineligible for a youth offender parole hearing under Penal Code section 3051[2] because he was sentenced to life without the possibility of parole (LWOP) plus 25 years to life for his convictions of special circumstance first degree murder with a firearm enhancement, second degree robbery, and possession of a firearm by a felon. The jury also found true gang and firearm enhancement allegations. Perez was 22 years old when he committed the offenses.

On appeal, Perez contends section 3051 violated his federal and state constitutional rights to equal protection because young adult offenders serving LWOP sentences for crimes they committed when they were 18 to 25 years old are ineligible for youth offender parole hearings, but young adult offenders serving non-LWOP sentences and juvenile offenders who committed crimes before the age of 18 serving LWOP sentences are eligible. Perez also argues his LWOP sentence constituted cruel or

---

[1]     In *People v. Franklin* (2016) 63 Cal.4th 261, 283-284, the Supreme Court held a juvenile offender who is eligible for a youth offender parole hearing pursuant to Penal Code section 3051 is entitled to a hearing to develop and preserve evidence of his or her youth-related characteristics and the circumstances at the time of the offense. In *In re Cook* (2019) 7 Cal.5th 439, 451, the Supreme Court further held that "an offender entitled to a hearing under sections 3051 and 4801 may seek the remedy of a *Franklin* proceeding even though the offender's sentence is otherwise final."

[2]     Further undesignated statutory references are to the Penal Code.

unusual punishment in violation of the California Constitution. (Cal. Const., art. I, § 17.) We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Evidence at Trial*[3]

On May 5, 2016 Perez was at a motel in Sylmar with Cindy Catalan and Perez's friend, Evelyn Martinez. The three had been using drugs, and Martinez arranged a purchase of Xanax from her source, Miles Rose. Perez, Catalan, and Martinez drove to an apartment building to meet Rose. Catalan drove; Martinez sat in the front passenger seat, and Perez sat in the back seat behind Martinez. On their way to meet Rose, Perez told Catalan that they should "come up" on the seller, which meant to take the drugs from Rose without paying.

At the apartment building, Rose came downstairs and approached the passenger-side front window. After Rose handed the pills to Martinez, which were ultimately passed to Perez, an argument ensued over the price of the pills. Perez kicked Catalan's seat, and when she turned around, Perez nodded at her. Catalan understood that Perez wanted her to drive away. Perez was holding a gun in his lap. He pointed the gun at Rose and said the pills were now his. Rose jumped in the car and began fighting with Perez. As Catalan drove away, shots were fired. Catalan jumped out of the moving car, which crashed. Martinez and Perez ran away after the crash, and Rose exited the car and left in a different direction. Rose later died from the gunshot wound.

---

[3] We summarize the evidence at trial from our prior opinion in *People v. Perez* (Feb. 11, 2019, B284398) [nonpub. opn.] (*Perez*).

At trial a gang expert testified Perez was a member of the San Fernando gang, and Catalan was an associate. The shooting occurred in territory claimed by a newer, less powerful gang. The expert opined based on a hypothetical mirroring the facts of the case that the murder and robbery of the drug dealer were done for the benefit of the San Fernando criminal street gang.

B.    *The Verdicts, Sentencing, Appeal, and Remand*

The jury found Perez guilty of first degree murder (§ 187, subd. (a)); count 1), second degree robbery (§ 211; count 2), and possession of a firearm by a felon (§ 29800, subd. (a)(1); count 3). The jury found true as to count 1 the special circumstance allegation Perez committed the murder while he was engaged in the crime of robbery. The jury also found true the allegation that Perez committed the three offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)) and, with respect to counts 1 and 2, multiple firearm enhancement allegations.

The trial court sentenced Perez to an aggregate term of LWOP, plus 25 years to life. On count 1 the court imposed a sentence of LWOP, plus a consecutive term of 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)), plus a 10-year term for the gang enhancement, which it stayed under section 654. The court imposed but stayed the middle term of three years on count 2 and imposed the middle term of two years on count 3 to run concurrent with the sentence on count 1.

Perez appealed. We affirmed the judgment but reversed the sentence and remanded for the trial court to exercise its discretion whether to impose or strike the gang and firearm enhancements. (*Perez, supra*, B284398.) On remand, the court struck the gang enhancements on all counts. On count 1 the

4

court again imposed a sentence of LWOP, plus 25 years to life on the firearm enhancement under section 12022.53, subdivision (d). On count 2 the court imposed and stayed the lesser firearm enhancements under section 12022.53, subdivisions (b) and (c).

C.     *Perez's Motion for a* Franklin/Cook *Proceeding*

On June 27, 2023 Perez, representing himself, filed a five-page motion requesting a *Franklin/Cook* proceeding to make a record of mitigating evidence tied to his youth and appointment of counsel.  (See *In re Cook, supra*, 7 Cal.5th at p. 451; *People v. Franklin, supra*, 63 Cal.4th at pp. 283-284.)  Perez asserted he was sentenced to LWOP for first degree murder and was 22 years old at the time of the offenses, citing the abstract of judgment. Perez argued the exclusion from eligibility for youth offender parole hearings for 18-to-25-year-old young adult offenders who had been sentenced to LWOP violated his federal and state constitutional rights to equal protection (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a)) and the state Constitution's ban on cruel or unusual punishment (Cal. Const., art. I, § 17).

On June 28, 2023 the superior court summarily denied Perez's request for a *Franklin/Cook* proceeding, describing Perez's motion as a petition for writ of habeas corpus.  The court explained in a written order, "Petitioner was sentenced to life without the possibility of parole (LWOP), and is therefore statutorily ineligible for a youth offender parole/*Franklin* hearing."[4]

---

[4]     Perez's motion was titled a "Motion for a Franklin/Cook Proceeding" (capitalization omitted), and we treat Perez's appeal as taken from a postjudgment order.

Perez timely appealed.

## DISCUSSION

A. *Section 3051 Does Not Violate Perez's Constitutional Right to Equal Protection*

"Section 3051 provides that, at a time designated in the statute, the Board of Parole Hearings must hold a parole hearing 'for the purpose of reviewing the parole suitability of any prisoner who was 25 years of age or younger . . . at the time of the controlling offense.' (§ 3051, subd. (a)(1); *id.*, subd. (d).)  How much time must pass before an eligible youth offender receives a parole hearing depends on the length of the original sentence for the "'[c]ontrolling offense,'" a term defined to mean 'the offense or enhancement for which any sentencing court imposed the longest term of imprisonment.' (*Id.*, subd. (a)(2)(B).)  An offender sentenced to a determinate term becomes eligible for parole after 15 years (*id.*, subd. (b)(1)); an offender sentenced to an indeterminate life term of fewer than 25 years to life becomes eligible after 20 years (*id.*, subd. (b)(2)); and an offender sentenced to an indeterminate life term of 25 years to life, or an offender sentenced to life without parole for a crime committed before the age of 18, becomes eligible after 25 years (*id.*, subd. (b)(3), (4))." (*People v. Hardin* (2024) 15 Cal.5th 834, 842-843 (*Hardin*).)

"Certain persons are, however, categorically ineligible for youth offender parole hearings, including offenders sentenced for multiple violent or serious felonies under the 'Three Strikes' law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12); offenders sentenced for sex offenses under the One Strike law (*id.*, § 667.61); and offenders who, 'subsequent to attaining 26 years of age, commit[]

6

an additional crime for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison.' (§ 3051, subd. (h).) The statute also excludes those who . . . are sentenced to life without parole for a controlling offense committed after reaching the age of 18. (*Ibid.*)" (*Hardin, supra*, 15 Cal.5th at p. 843.)

Perez contends section 3051's exclusion of young adult offenders (ages 18 to 25) with LWOP sentences from eligibility for a youth offender parole hearing violated his federal and state constitutional rights to equal protection. The Supreme Court recently rejected this argument in *Hardin, supra*, 15 Cal.5th at page 864.

In *Hardin*, Tony Hardin was sentenced to LWOP following his conviction of first degree murder with a special circumstance finding for an offense he committed when he was 25 years old. (*Hardin, supra*, 15 Cal.5th at p. 840.) Hardin asserted section 3051 violated his right to equal protection because "once the Legislature decided to expand [youth offender parole] opportunities to young adults, it could not rationally treat those sentenced to life without parole differently from those convicted of other serious crimes and serving lengthy parole-eligible sentences." (*Hardin*, at p. 846.) The Supreme Court clarified the standard for rational basis review of an equal protection claim, explaining, "[W]hen plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection, courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question. The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the

applicable standard of review.  The burden is on the party challenging the law to show that it is not."  (*Id.* at pp. 850-851; accord, *People v. Williams* (2024) 17 Cal.5th 99, 124 (*Williams*).)

Under rational basis review, applicable here, a court "presume[s] that a given statutory classification is valid 'until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable.'  [Citation.]  The underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers, nor 'be empirically substantiated.'" (*Hardin, supra*, 15 Cal.5th at p. 852; accord, *Williams, supra*, 17 Cal.5th at p. 124.)  The *Hardin* court reviewed section 3051's legislative history and observed that "in designing section 3051, the Legislature consciously drew lines that altered the parole component of offenders' sentences based not only on the age of the offender (and thus the offender's amenability to rehabilitation) but also on the offense and sentence imposed.  The lines the Legislature drew necessarily reflect a set of legislative judgments about the nature of punishment that is appropriate for the crime."  (*Hardin*, at p. 855.)  The court acknowledged that it "may be true," as Hardin had argued, that the crime-based categories that affect at what age an offender is eligible for relief may not be rationally related to the purpose of expanding opportunities for early release based on the attributes of youth. (*Ibid*.)  But, the court continued, the Legislature was aware of this point, and "nonetheless crafted a statutory scheme that assigns significance to the nature of underlying offenses and accompanying sentences."  (*Ibid*.)  Therefore, the court reasoned, "[t]he statutory framework indicates that the Legislature aimed to increase opportunities for meaningful release for young adult

offenders, while taking into account the appropriate punishment for the underlying crimes, depending on their severity."  (*Ibid*.)

The Supreme Court held Hardin could not establish that "the Legislature's decision to exclude offenders convicted of special circumstance murder from the youth offender parole system" is 'so devoid of even minimal rationality that it is unconstitutional as a matter of equal protection.'"[5]  (*Hardin, supra*, 15 Cal.5th at p. 859.)  The court explained that section 190.2 adequately separates out the most egregious murders (special circumstance murders), which are subject to the most severe punishment—death or LWOP—from other murders (*id*. at p. 859), and therefore, "it is difficult to see how the Legislature that enacted section 3051 could have acted irrationally in singling out special circumstance murder as a particularly culpable offense."  (*Id*. at p. 860.)  Accordingly, Hardin failed to show "that the exclusion of offenders who are serving sentences of life in prison without the possibility of parole for a crime committed after the age of 18 from youth offender parole eligibility is irrational."  (*Id*. at p. 864.)

Perez acknowledges that under *Hardin* he "may be unable to prevail" on his equal protection claims based on the different treatment of young adult offenders with LWOP from those who committed murder but were not sentenced to LWOP. Similar to the defendant in *Hardin*, Perez was sentenced to LWOP after he was convicted of special circumstance murder. However, Perez contends *Hardin* does not preclude his equal

---

[5]    In *Hardin*, the defendant raised only an equal protection challenge under the equal protection clause of the Fourteenth Amendment of the United States Constitution.  (*Hardin, supra*, 15 Cal.5th at p. 847, fn. 2.)

9

protection argument that there is no rational basis to distinguish between young adult offenders and juvenile offenders sentenced to LWOP.  Perez is correct that the Supreme Court in *Hardin* did not consider this equal protection challenge, but the court observed that this court had held, and Hardin did not dispute, that it was unnecessary to address this argument, explaining "the Legislature acted reasonably in distinguishing between offenses committed before and after the age of 18 because the Eighth Amendment (and the law more generally) makes the same distinction."  (*Hardin, supra*, 15 Cal.5th at p. 846.)

Perez fails to show that the Legislature acted irrationally in granting youth offender parole hearings to juvenile offenders with LWOP sentences but denying such hearings to young adult offenders with LWOP sentences.  As explained by the Court of Appeal in *People v. Sands* (2021) 70 Cal.App.5th 193, 204 in rejecting a similar equal protection challenge to section 3051, "The Legislature had a rational basis to distinguish between offenders with the same sentence (life without parole) based on their age.  For juvenile offenders, such a sentence may violate the Eighth Amendment.  [Citations.]  But the same sentence does not violate the Eighth Amendment when imposed on an adult, even an adult under the age of 26."  The *Sands* court reasoned "the Legislature could rationally decide to remedy unconstitutional sentences but go no further."  (*Sands*, at p. 204; accord, *In re Murray* (2021) 68 Cal.App.5th 456, 463-464 [rejecting equal protection challenge to section 3051 based on the different treatment of juvenile and young adult offenders sentenced to LWOP because "the United States and California Supreme Courts have found the line drawn between juveniles and nonjuveniles to be a rational one"]; *People v. Morales* (2021)

10

67 Cal.App.5th 326, 347 ["for purposes of LWOP offenders, the line drawn at 18 is a rational one"]; *People v. Acosta* (2021) 60 Cal.App.5th 769, 779 ["[T]here is a rational basis for distinguishing between juvenile LWOP offenders and young adult LWOP offenders: their age."].)

B.  *Section 3051 Does Not Violate the State Constitutional Prohibition Against Cruel or Unusual Punishment*

Perez contends his LWOP sentence constituted cruel or unusual punishment under article 1, section 17 of the California Constitution.[6]  He argues that sections 3051 and 4801[7] rendered his LWOP sentence constitutionally excessive because the Legislature, in enacting the sections, acknowledged that youthful offenders who commit serious or violent offenses before they turn 26 years old are less culpable than older offenders, but it denied youth offender parole hearings for young adult offenders sentenced to LWOP.  Perez has failed to meet his burden to show his LWOP sentence constituted constitutionally excessive punishment.

---

[6]     Perez does not contend his sentence constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

[7]     Section 4801, subdivision (c), provides that "[w]hen a prisoner committed his or her controlling offense . . . when he or she was 25 years of age or younger, the board [of parole hearings], in reviewing a prisoner's suitability for parole pursuant to Section 3041.5, shall give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law."

11

In *In re Palmer* (2021) 10 Cal.5th 959, 971-972, the Supreme Court held with respect to excessive punishment claims under the California Constitution that "the court's inquiry properly focuses on whether the punishment is 'grossly disproportionate' to the offense and the offender or, stated another way, whether the punishment is so excessive that it "'shocks the conscience and offends fundamental notions of human dignity.""" (Accord, *In re Butler* (2018) 4 Cal.5th 728, 746 ["A sentence violates the prohibition against unconstitutionally disproportionate sentences only if it is so disproportionate that it 'shocks the conscience.'"].) *Palmer* articulated "three analytical techniques to aid our deferential review of excessiveness claims: (1) an examination of the nature of the offense and the offender, with particular attention to the degree of danger both pose to society; (2) a comparison of the punishment with the punishment California imposes for more serious offenses; and (3) a comparison of the punishment with that prescribed in other jurisdictions for the same offense." (*Palmer*, at p. 973.) The Supreme Court added, "A claim of excessive punishment must overcome a 'considerable burden' [citation], and courts should give "'the broadest discretion possible'" [citation] to the legislative judgment respecting appropriate punishment." (*Id.* at p. 972.)

With respect to juvenile offenders, in *Miller v. Alabama* (2012) 567 U.S. 460, 479, the United States Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" (who committed their crime before they turned 18 years old). The court's decision in *Miller* followed its decision in *Roper v. Simmons* (2005) 543 U.S. 551, 574 (*Roper*), which held the Eighth Amendment prohibited the imposition of the death

penalty for juvenile offenders.  In *People v. Caballero* (2012) 55 Cal.4th 262, 268, the California Supreme Court held, in the context of a 110-years-to-life sentence imposed on a juvenile for nonhomicide offenses, that parole-eligible sentences for juvenile offenders violate the Eighth Amendment if the parole eligibility date falls beyond the offender's natural life expectancy.

The California Supreme Court in *People v. Flores* (2020) 9 Cal.5th 371, 429, considered whether the Eighth Amendment's prohibition on the death penalty for juvenile offenders under *Roper* should apply to youthful offenders who commit crimes between the ages of 18 and 21.  The court rejected the defendant's argument that the Legislature's enactment of section 3051, subdivision (a)(1), providing youth offender parole hearings to most youthful offenders who were 25 or younger at the time of their commitment offense, supported a "categorical bar on the death penalty for individuals between the ages of 18 and 21 at the time of their offenses."  (*Flores,* at p. 429; accord, *People v. Tran* (2022) 13 Cal.5th 1169, 1234-1235 [rejecting argument "that imposing the death penalty on persons for crimes committed while they were 18 to 20 years old violates the state and federal Constitutions because it is cruel and unusual punishment"]; *People v. Powell* (2018) 6 Cal.5th 136, 191 [death penalty did not constitute cruel and unusual punishment in violation of the federal and state Constitutions where defendant was 18 years old at the time of the killing].)

The Courts of Appeal have applied a similar analysis to Eighth Amendment challenges to young adult LWOP sentences. As the court explained in *In re Williams*, 57 Cal.App.5th 427, 439, "If the Eighth Amendment does not prohibit a sentence of death for 21 year olds, then most assuredly, it does not prohibit

13

the lesser LWOP sentence."  (Accord, *People v. Acosta, supra*, 60 Cal.App.5th at p. 782 [LWOP sentences did not violate Eighth Amendment where defendant was 21 years old at the time of the murders]; *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1020, 1030-1032 [rejecting an 18-year-old defendant's contention his LWOP sentence was cruel and unusual punishment under the Eighth Amendment].)

Perez argues that the cases that found young adult LWOP sentences did not constitute cruel and unusual punishment relied on the Eighth Amendment, and not article I, section 17 of the California Constitution, which prohibits cruel *or* unusual punishment.  But Perez does not provide any authority or rationale justifying a different result under the California Constitution.  And, as the California Supreme Court observed in *Hardin, supra*, 15 Cal.5th at page 847, footnote 2, with respect to Hardin's equal protection challenge under the California Constitution, there is ""no reason to suppose" that federal equal protection analysis would yield a result different from what would emerge from analysis of the state Constitution."  (See *People v. Baker* (2018) 20 Cal.App.5th 711, 733 ["There is considerable overlap in the state and federal approaches.  'Although articulated slightly differently, both standards prohibit punishment that is "grossly disproportionate" to the crime or the individual culpability of the defendant.'  [Citation.]  'The touchstone in each is gross disproportionality."].)

Applying the analytical framework established by *In re Palmer, supra*, 10 Cal.5th at page 973, we conclude Perez's LWOP sentence does not constitute cruel or unusual punishment under the California Constitution.  Perez was convicted of special circumstance murder when he was 22 years old, and we must

14

defer to the Legislature's determination that his special circumstance murder conviction warranted the severe punishment of LWOP.  (*Id.* at p. 972 [the Legislature is given "considerable latitude in matching punishments to offenses" because "'[t]he choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will'"].)  Perez's LWOP sentence for special circumstance murder is not "'grossly disproportionate' to the offense and the offender," nor is it "so excessive that it "'shocks the conscience and offends fundamental notions of human dignity.'"" (*Palmer*, at p. 972; see *In re Butler, supra*, 4 Cal.5th at p. 746.)

## DISPOSITION

The order denying Perez's motion for a *Franklin/Cook* proceeding is affirmed.


FEUER, J.

We concur:


MARTINEZ, P. J.


SEGAL, J.

15